UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| CYNTHIA HOPKINS, | ) | Case No. 5:08 CV 2288 |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | MEMORANDUM OPINION |
| | ) | (Resolving ECF # 45, 46) |
| CANTON CITY BOARD OF | ) | |
| EDUCATION, *et al.* | ) | |
| | ) | |
| Defendants. | ) | Magistrate Judge James S. Gallas |
| | ) | |

Plaintiff Cynthia Hopkins, a teacher in the Canton, Ohio City School District complains of race discrimination against her employer, the Canton City Board of Education, her former supervisor, Karen Williams, a retired Director of Secondary Education, Judith Robinson the Director of Human Resources, and the former District Superintendent, Dianne Talarico.  Ms. Hopkins is African-American while her supervisors and former supervisor are Caucasian. According to  Ms. Hopkins she was employed as a teacher in the Canton City School District since 1997 when she was hired as a math teacher.  Later, she was promoted to an administrative position as the Multi-County Coordinator at the Multi-County Center, a secondary school within a juvenile detention facility, a position which she held from 2001 until March 2004. A Coordinator functions as a school principal.

Her immediate supervisor had been Ms. Williams who evaluated Ms. Hopkins annually and reported that she was meeting expectations. On February 25, 2004, Ms. Williams reported that Ms. Hopkins met expectations for the 2003-2004 school year. On June 10, 2004, Ms.

2

Hopkins was placed on indefinite paid administrative leave by Ms. Robinson for unprofessional conduct based on a complaint from a male teacher under Ms. Hopkins' supervision, and her alleged involvement in the "non Canton City Schools evaluation of Multi-County teaching and non-teaching staff." (Ex. 5(a), June 10, 2004-letter, ECF # 45-2).   After Ms. Williams retired in August 2004, she rescinded her favorable evaluation in a letter dated September 20, 2004, which she signed as Director of Secondary Education on school district letterhead.[1]  Ms. Hopkins contends that this letter was ammunition manufactured to allow defendants to remove her from her position.   In this letter Ms. Williams faulted Ms. Hopkins for: (1) failing to follow the collective bargaining agreement with respect to an evaluation of one teacher at Multi-County; (2) which resulted in the need for the Canton City Board of Education to respond regarding the teacher's complaints of unfair treatment and the Superintendent's recommendation of nonrenewal of his contract was withdrawn and the Board directed that the teacher be issued a six-month teaching contract; (3) bypassing the appropriate channels to complain about employee performance to school district counsel rather than first contacting Human Resources; (4) ordering her secretary to secure directly a copy of a teacher contract from another district rather than involving Human Resources; (5) failing to conduct an investigation, make recommendations, and take action on discipline against staff  following a field trip to the Great Lakes Science Center where three students escaped; (6) making special arrangements for ACT testing without approval of such testing; (7) arranging a tutor for a student without approval from the Board to hire this individual and failing to generate any authorizing documentation; (8)

---

[1]   Ms. Hopkins alleges that Ms. Williams admitted that she had originally written the letter in draft form and submitted it to Human Resources for editing. However, Ms. Hopkins does not  cite any evidence in support based on personal knowledge. See Fed. R. Civ. P. 56(e)(1).

3

meeting with electronic classroom representatives on June 10, 2004, which resulted in Multi-County students being enrolled in a "digital academy" performance rated as being in academic emergency by the Ohio Department of Education; (9) undertaking to develop a staff handbook to be implemented during the 2004-2005 school year; and, (10)  giving a male staff member a manicure set, which he perceived as demeaning. (Ex. 5(b) September 20, 2004 letter, ECF # 45-2).

For the 2004-2005 school year the Superintendent, Ms. Talarico, recommended to the Board of Education that Ms. Hopkins' contract be renewed for one year, as opposed to a more typical three-year renewal. On August 2, 2004, Ms. Robinson requested that Ms. Hopkins resign and accept a lower paid teaching position.  On March 3, 2005, Ms. Hopkins alleges that she received an unfavorable performance evaluation with the recommendation not to renew her contract as Multi-County Coordinator. The recommendation was accepted by the Board and Ms. Hopkins was demoted to a middle school math teaching position.  From March 2006 to the present, Ms. Hopkins has applied for and been rejected for several administrative positions for which she is qualified and certified. The Board, however, is alleged to have filled these positions with Caucasian females.

Ms. Hopkins charges violation of her civil rights under 42 U.S.C. §1983, conspiracy to deprive her of her rights under state law and under the Constitution of the United States, retaliation subsequent to filing her case in court and a complaint with the EEOC, and race discrimination in violation to Ohio Rev. Code Chapter 4112, and state public policy.  Defendants

4

have moved for summary judgment with supporting affidavits pursuant to Fed. R. Civ. P. 56(a).

*Standard of review:*

Under Rule 56 of the Federal Rules of Civil Procedure granting a motion for summary judgment is only proper when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law.  In determining whether there is a genuine issue of material fact all inferences drawn from the underlying facts contained in affidavits, pleadings, responses to discovery requests, and depositions must be viewed in the light most favorable to the party opposing the motion.  *Matsushita Elec. Indus. Co. v. Zenith Radio Corp*., 475 U.S. 574, 587-88, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986); *United States v. Diebold, Inc.*, 369 U.S. 654, 82 S.Ct. 993, 8 L.Ed.2d 176 (1962). The burden is upon the movant to demonstrate the absence of a genuine issue of material fact.  *Adickes v. S. H. Kress & Co.*, 398 U.S. 144, 157, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970); *Smith v. Hudson*, 600 F.2d 60, 63 (6th Cir. 1979), *cert. dismissed* 444 U.S. 986 (1979). The burden on the nonmoving party is the opposite and she "must set forth specific facts showing that there is a genuine issue for trial." Fed.R.Civ.P. 56(e); *Roger Miller Music, Inc. v. Sony/ATV Publishing, LLC,* 477 F.3d 383, 389 (6th Cir. 2007).  Her burden requires the production of  significant probative evidence in support of the complaint to defeat the motion for summary judgment through affidavits or admissions on file.  *Moore v. Phillip Morris Cos., Inc.*, 8 F.3d 335, 339-40 (6th Cir. 1993); and see *Celotex Corporation v. Catrett*, 477 U.S. 317, 324, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).   "'The mere existence of a scintilla of evidence' that supports the non-moving party's claims is insufficient to defeat summary judgment." *Roger Miller Music, Inc.,* 477 F.3d at 389 (quoting *Hopson v. DaimlerChrysler Corp.*,

5

306 F.3d 427, 432 (6th Cir. 2002); see also *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986)( A court must inquire "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.") The court may not make credibility determinations or weigh the evidence when ruling on a motion for summary judgment. *Anderson*, 477 U.S. at 255.

In the final analysis, "the threshold inquiry . . . [is] whether there is a need for trial -- whether in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Anderson*, 477 U.S. at 250; *Moore*, 8 F.3d at 340.

Any affidavits "must be made on personal knowledge [and] set out facts that would be admissible in evidence." *Celotex Corp. v. Catrett*, 477 U.S. at 324; Fed. R. Civ. P. 56(e)(1). However,  "[i]f a party fails to object before the district court to the affidavits or evidentiary materials submitted by the other party in support of its position on summary judgment, any objections to the district court's consideration of such materials are deemed to have been waived." *Powers v. Hamilton County Public Defender Com'n,*  501 F.3d 592, 613 (6th Cir. 2007)(quoting *Wiley v. United States*, 20 F.3d 222, 226 (6th Cir.1994).

*Civil Rights Claims:*

Ms. Hopkins' federal claims in the first count of her complaint are brought under 42 U.S.C. §1983 which, ". . . merely provides a mechanism for enforcing individual rights 'secured' elsewhere, i.e., rights independently 'secured by the Constitution and laws' of the United States.

6

For §1983 by itself does not protect anyone against anything.'" *Gonzaga Univ. v. Doe*, 536 U.S. 273, 285, 122 S.Ct. 2268, 153 L.Ed.2d 309 (2002), quoting *Chapman v. Houston Welfare Rights Org.*, 441 U.S. 600, 617, 99 S.Ct. 1906, 60 L.Ed.2d 508 (1979); and see *Radvansky v. City of Olmsted Falls*, 395 F.3d 291, 301 (6th Cir. 2005)(§1983 "merely provides remedies for deprivations of rights established elsewhere."). The complaint refers to the Constitution of the Untied States and its amendments following allegations of job transfer by the Board of Education without consent,"action initiated without notice and hearing," and derivation of Ms. Hopkins' property rights without due process of law. Ms. Hopkins further alleges deprivation of substantive due process, and of her rights to pursue liberty, happiness and of equal protection of the laws as parts of her §1983 claims. [2] The Board of Education contends in its motion for summary judgment that it is not liable because no municipal policy is alleged in this single-incident case. Ms. Hopkins responds citing *Memphis Comm. School Dist. v. Stachura*, 477 U.S. 299 (1986), *In re Gault*, 387 U.S. 1 (1967), and *Depas v. Highland Local Dist. Bd. of Ed.*, 52 Ohio St.2d 193, 370 N.E. 2d 247 (1977), as support for a due process claim deprivation of property claim.

*Procedural Due Process:*

During March 2005, Ms. Hopkins was informed that her one year contract as school

---

[2] The rights to pursue liberty and happiness are not contained in the Constitution, but appear in the second section of the *Declaration of Independence*, as follows:

We hold these Truths to be self-evident, that all Men are created equal, that they are endowed by their Creator with certain unalienable Rights, that among these are Life, Liberty and the pursuit of Happiness.

7

Coordinator for the 2004-2005 school year would not be renewed, and the following year she

was assigned as a teacher at Hartford Middle School. State law provides in  Ohio Rev. Code §

3319.02(B)  that "[t]he board of each city  . . . school district shall employ principals for all high

schools[.]"  Ohio Rev. Code §3319.02(D)(4) provides the operative language for the  nonrenewal

process for school administrators in Ohio, and states:

> Before taking action to renew or nonrenew the contract of an assistant superintendent,
> principal, assistant principal, or other administrator under this section and prior to the last
> day of March of the year in which such employee's contract expires, the board shall
> notify each such employee of the date that the contract expires and that the employee
> may request a meeting with the board. Upon request by such an employee, the board shall
> grant the employee a meeting in executive session. In that meeting, the board shall
> discuss its reasons for considering renewal or nonrenewal of the contract. The employee
> shall be permitted to have a representative, chosen by the employee, present at the
> meeting.

Absent failure to timely notify the administrator of nonrenewal, a school board's exercise

of discretion is not subject to judicial review in the state courts. See *State ex rel. Martines v.

Cleveland City School Dist. Bd. of Ed.*, 70 Ohio St3d 416, 639 N.E.2d 80 (1994); *State ex rel.

Cassels v. Dayton City School Dist. Bd. of Ed.*, 69 Ohio St.3d 217, 631 N.E.2d 150 (1994);

*Bertolini v. Whitehall City School District Bd. of Ed.,* 2003 WL 21152516, at *4, 2003-Ohio-

2578 (Ohio App. 10 Dist). *State ex rel. Jones v. Sandusky City Schools,*  2006 WL 146210, at *

2, 2006-Ohio-188 (Ohio App. 6 Dist.).

What Ms. Hopkins is aiming for is a *Loudermill*-type claim where she will need to

establish that she "enjoyed a cognizable [property] interest in continuing employment absent

cause for discharge," which the state could abrogate "only by observing the strictures of due

process." *Loudermill v. Cleveland Bd. Of Ed.*, 721 F.2d 550, 559 (6th Cir. 1983), *aff'd, sub nom.*

*Cleveland Bd. Of Educ. v. Loudermill,* 470 U.S. 532, 537-540  105 S.Ct. 1487, 84 L.Ed.2d 494 (1985).  Ms. Hopkins' property interest in public employment exists commensurately with state law, governing rules, and mutual explicit understandings that support a claim of entitlement to continued employment worthy of due process protection. See *Perry v. Sindermann*, 408 U.S. 593, 600-02, 92 S.Ct. 2694, 2699-2700, 33 L.Ed.2d 570 (1972); *Cleveland Bd. of Ed.*, 470 U.S. at 538, 105 S.Ct. at 1491; *Leary v. Daeschner*, 228 F.3d 729, 741 (6th Cir. 2000).  She did enjoy tenure protection as a former teacher under §3319.02(C), which requires that "[w]hen a teacher with continuing service status becomes a[] . . .  principal . . . the teacher retains such status in the teacher's nonadministrative position as provided in sections 3319.08 and 3319.09 of the Revised Code."  See *State ex rel. Midlam v. Greenville City School Dist. Bd. of Ed.*, 161 Ohio App. 3d 696, 700-01, 831 N.E.2d 1056, 2005-Ohio-3061 (2nd Dist. 2005).

However, this guarantee of continued employment beyond the term of the contract as a teacher did not apply to her position in an Ohio school administrative job as principal. She served as Coordinator under a contract which guaranteed only one year of employment. She did have a property interest in her one-year employment contract.  See *Jordan v. City of Lake Oswego*, 734 F.2d 1374, 1376 (9th Cir. 1984)(Property interest in four year contract as city attorney). However, her right to continued employment as a school principal was dependent upon renewal of her contract by the school board. She had no property interest in renewal of her employment contract.  Ohio Rev. Code §3319.02(D) creates no property interest for Fourteenth Amendment due process protection for renewal of the employment contract. See *Simiele v. Bd. of Ed. of the Cleveland City School Bd.*, 57 F.3d 1070, 1995 WL 334501 (Table) (6th Cir. June 5,

9

1995).[3] Without more there is only a "unilateral expectancy" of reemployment, which is clearly not sufficient to warrant due process protection. See *Lacy v. Dayton Bd. of Ed.*, 550 F. Supp. 835, 840-41 (S.D. Ohio); *Ash v. Bd. of Ed. of Woodhaven School Dist.*, 699 F.2d 822, 825 (6th Cir. 1983); and see  *Depas*, 52 Ohio St.2d at 197-98.

Ms. Hopkins argues that she had at least an expectancy under §3319.02(C) of a two-year contract when her contract was renewed for only one year for the July1, 2004 to July 1, 2005 school year period. (See Defendants' Ex. D, ECF # 45-1).  However, §3319.02(C) allows one occurrence of a one-year contract renewal. [4] Ms. Tallarico as Superintendent exercised this provision with her recommendation on March 22, 2004, that Ms. Hopkins' contract be renewed only for one year. (Talarico Aff. Ex. A-7).

Ms. Hopkins next argues that under §3319.02(C), "[e]xcept by mutual agreement of the parties thereto, no . . .  principal . . .  shall be transferred during the life of a contract to a position of lesser responsibility."   Ms. Hopkins  was transferred from her position as Coordinator at

---

[3]  This contrasts to the situation of contract termination pursuant to Ohio Rev. Code §3319.02(C)which incorporates from  §3319.16 the protections afforded tenured teachers. These statutes set out explicit guarantees of notice and hearing before a school board may break an employment contract, as opposed to letting it run out. Compare *McDaniel v. Princeton City School Dist. Bd. of Educ.,*45 Fed.Appx. 354, 358(6th Cir. Aug. 15, 2002)(3319.16 and collective bargaining agreement created a property interest in continued employment).

[4]  The pertinent language under § 3319.02 (C) reads:

 . . . the term of the contract shall be for not more than five years and, unless the superintendent of the district recommends otherwise, not less than two years. **If the superintendent so recommends**, **the term of the contract** of a person who has been employed by the district or service center as an assistant superintendent, principal, assistant principal, or other administrator for three years or more **may be one year,** but all subsequent contracts granted such person shall be for a term of not less than two years and not more than five years.(emphasis supplied).

10

Multi-County to an administrative position at Hartford Middle School during the balance of her 2004-2005 contract period. (Talarico Aff. Ex. A-7; Defendants' Exs. C,  J). Ms. Hopkins was asked by defendants to resign as Coordinator on August 2, 2004 and accept a teaching position at Hartford Middle School. She refused through her counsel, and negotiated for an administrative position at that school. *Id*. She complains that she was nothing but a "glorified secretary" at Hartford Middle School during this period. [5]

Ms. Hopkins argues that she had been demoted in her responsibilities.  Defendants argue that there is no property interest that protects against reassignment, or against what Ms. Hopkins perceives as demotion.  This position is not correct. The specific statutory provision is a rule conferring an entitlement to the benefit. See *Perry v. Sindermann*, 408 U.S. at 601, 92 S.Ct. at 2699;  *Board of Regents of State Colleges v. Roth*, 408 U.S. 564, 577, 92 S.Ct. 2701, 2709, 33 L.Ed.2d 548 (1972); *Banks v. Burkich*, 788 F.2d 1161, 1165-1165 (6th Cir. 1986) (Teacher demoted to truant officer had no protected property interest to reinstatement under Kentucky law under statute guaranteeing only continued employment within a school district, but not in a particular position or school). The rule is that "no protected property interest is implicated when an employer reassigns or transfers an employee absent specific statutory provision or contract term to the contrary." *Anglemyer v. Hamilton County Hosp*., 58 F.3d 533,

---

[5]  Defendants' Exhibit C states that Ms. Hopkins' administrative duties at Hartford included:   assessment and data collection; building supervision of busses, hallways and cafeteria; staff development; assisting with after-school programs and sporting events; building representative for the P.T.O.;  and working with first year math teacher.

11

539 (10ᵗʰ Cir. 1995); [6] and see *DePree v. Saunders,* 588 F.3d 282, 289 -290 (5ᵗʰCir.2009)

(College professor who was relieved of teaching duties but allowed to continue research at same

salary, had "no unique property interest in teaching."). Under this general rule, a statute or

contract provision requiring "mutual agreement" with a school faculty member before

implementing contract modification confers a form of tenure that goes beyond mere procedural

protection and creates a substantial restriction on the governmental employer's discretion. See

*Hulen v. Yates*, 322 F.3d 1229, 1240-41 (10th Cir.2003); *Hennigh v. City of Shawnee*, 155 F.3d

1249, 1254 (10ᵗʰ Cir. 1998)("the same analysis applied to determine the existence of a property

right in employment is utilized to determine whether there is a property right in a particular

employment status." ).  In that situation the adequacy of the process afforded is measured in

relation to the procedural safeguards of termination with respect to notice and hearing. *Hulen*,

---

[6]  The 10ᵗʰ Circuit summarized the relevant circuit case law in *Anglemyer v. Hamilton County Hosp.*, which showed that generally the governmental employer has discretion:

All of the courts of appeals that have addressed this issue have reached an identical conclusion. See, e.g., *Clark v. Township of Falls*, 890 F.2d 611, 617-19 (3d Cir.1989) (temporary six-week reassignment of police officer was not a constructive reduction in rank; therefore, no property interest was implicated under Pennsylvania law); *Huang v. Bd. of Governors of Univ. of North Carolina*, 902 F.2d 1134, 1141-44 (4th Cir.1990) (tenured college professor had no property interest in particular departmental assignment under North Carolina law); *Kelleher v. Flawn*, 761 F.2d 1079, 1087 (5th Cir.1985) (no property interest in a particular teaching assignment under Texas law); *Garvie v. Jackson*, 845 F.2d 647, 651-52 (6th Cir.1988) (no property interest under Tennessee law in university department head position); *Volk v. Coler*, 845 F.2d 1422, 1430 (7th Cir.1988) (no property interest in a particular employment position under Illinois law); *Raposa v. Meade Sch. Dist. 46-1*, 790 F.2d 1349, 1353 (8th Cir.1986) (no property interest in a particular teaching assignment pursuant to South Dakota law); *Lagos v. Modesto City Sch. Dist.*, 843 F.2d 347, 349-50 (9th Cir.) (tenured high school mathematics teacher had no property interest in his additional school position as baseball coach under California law), cert. denied, 488 U.S. 926, 109 S.Ct. 309, 102 L.Ed.2d 328 (1988); *Childers v. Independent Sch. Dist. No. 1,* 676 F.2d 1338, 1340-41 (10th Cir.1982) (high school teacher had no property interest in vocational-agriculture teaching assignment under Oklahoma law); *Maples v. Martin*, 858 F.2d 1546, 1550-51 (11th Cir.1988) (job transfer or reassignment did not implicate a property interest under Alabama law). These cases indicate that an administrative decision to reassign or transfer a particular employee absent a statutory or contractual provision to the contrary is left to the "unfettered discretion" of the employer. *Roth*, 408 U.S. at 567, 92 S.Ct. at 2704.

*Id.*, 58 F.3d at 539.

12

322 F.3d at 1244.

Ms. Hopkins admitted in her deposition that she had been asked to sign a letter of resignation. She agreed that on October 14, 2004 she met with Ms. Robinson, and prior to that meeting Ms. Hopkins' counsel called "and made some type of suggestion." (Hopkins dep. p. 76). Following this meeting Ms. Hopkins was reassigned to Hartford Middle School and she retained her title of Coordinator and salary for the balance of her contract. (Hopkins dep. p. 35).

State law has not flushed out the term "mutual agreement," so it is conceivable that such agreement could arise under duress, as it was in this case, where she was given an option of resignation under threat of termination. Nonetheless, while transfer to Hartford Middle School was disagreeable to Ms. Hopkins, it was a negotiated outcome that permitted her to retain her employment as a school administrator. It was in that sense an outcome achieved under mutual consent, and in lieu of termination of her contract as a school administrator for the remainder of the 2004-2005 school year.

Additionally, the individual defendants raise qualified immunity as a defense to Ms. Hopkins' civil rights claims. Ms. Hopkins has not "offered sufficient evidence to indicate that what the official did was objectively unreasonable in light of clearly established constitutional rights." *Haynes v. City of Circleville, Ohio*, 474 F.3d 357, 362 (6th Cir. 2007); *Swiecicki v. Delgado*, 463 F.3d 489, 498 (6th Cir. 2006).

13

Finally, Ms. Hopkins complains that she received an evaluation from her new supervisor, Ms. Brenda Neel, indicating that she needed improvement based on a letter written earlier by defendant Ms. Williams, the former supervisor who had retired at the time her letter was written. Ms. Williams had submitted an evaluation of Ms. Hopkins on February 25, 2004, indicating that Ms. Hopkins had met expectations.  Later, in a letter on school board letterhead dated September 20, 2004, after Ms. Williams retirement, she reneged on her earlier evaluation explaining that in March 2004 she had recommended that Ms. Hopkins' contract not be renewed and she listed several "concerns " with respect to Ms. Hopkins' performance for the 2003-2004 school year which had been brought to Ms. Williams' attention after she had completed her earlier evaluation. (Defendants' Ex. 5(b)).  Ms. Hopkins merely argues that she was subjected to a unique evaluation circumstances.

The evaluation policies for school administrators implemented under Ohio Rev. Code §3319.02(D) do not create any property right in continued employment protectable under the due process clause. See *Lacy v. Dayton Bd. of Ed.*, 550 F. Supp. at 840-41.[7]  Even noncompliance with the evaluation procedures set forth under 3319.02(D) "does not invalidate a board's action not to renew an administrative contract."  *State ex rel. Jones v. Sandusky City*

---

[7]    The state legislature acted to circumvent the evaluation process as creating a mutual expectancy in continued employment, by providing:

> The establishment of an evaluation procedure shall not create an expectancy of continued employment. Nothing in division (D) of this section shall prevent a board from making the final determination regarding the renewal or nonrenewal of the contract of any assistant superintendent, principal, assistant principal, or other administrator

R.C. § 3319.02 (D)(5).

14

*Schools,* 2006 WL 146210, at *3 (citing *Cassels*, 69 Ohio St. 3d at 222).

*Substantive Due Process*:

As a general rule, "the termination of public employment does not constitute a denial of

substantive due process." *Young v. Twp. of Green Oak*, 471 F.3d 674, 684 (6th Cir.2006); and

see *Sutton v. Cleveland Bd. of Ed.*, 958 F.2d 1339, 1350 (6th Cir. 1992). The Fourteenth

Amendment's substantive due process component  protects specific fundamental rights of

individual freedom and liberty from deprivation at the hands of arbitrary and capricious

government action." *Young* , 471 F.3d at 684 (quoting *Sutton v. Cleveland Bd. of Educ.*, 958 F.2d

at 1350(quotation marks and citation omitted)); and see *Gutzwiller v. Fenik*, 860 F.2d 1317, 1328

(6th Cir. 1988) . "Absent the infringement of some 'fundamental' right,'. . . the termination of

public employment does not constitute a denial of substantive due process."  *Young* , 471 F.3d at

684 (quoting *Sutton v. Cleveland Bd. of Educ.*, 958 F.2d at 1351. "[C]ourts may override a

decision under substantive due process only if that decision is 'such a substantial departure from

accepted academic norms as to demonstrate that the person or committee responsible did not

actually exercise professional judgment.'" *Gutzwiller v. Fenik,* 860 F.2d at 1328 (quoting

*Regents of University of Michigan v. Ewing*, 474 U.S. 214, 225, 106 S.Ct. 507, 513, 88 L.Ed. 2d

523 (1985)). Ms. Hopkins has  produced nothing to elevate her claim to one of substantive due

process.  Compare *Jaffe v. Cleveland-Heights-University Heights City School Bd. of Ed.*, 983

F.2d 1066 (Table) (6th Cir. Jan. 7, 1993)( Summary suspension by superintendent due to alleged

sexual contact with students followed by termination without meaningful opportunity for hearing

and refusal to reinstate after acquittal on charges was arguably arbitrary).

*Equal Protection:*

Equal protection claims under 42 U.S.C. §1983 reach individuals acting under color of state law as well as state entities such as school districts. See *Fitzgerald v. Barnstable School Committee*, -U.S. -, 129 S.Ct. 788, 796-97, 172 L.Ed.2d 582 (2009). The basis of Ms. Hopkins' denial of equal protection claim is unclear. She alleges that she was singled-out for different treatment.  Presumably, she is asserting a claim of *disparate treatment* in employment. This would  constitute a viable equal  protection clause challenge to "[d]ecisions by faculties and administrators of public schools based on race or ethnic origin," and such claim is  reviewable under the Fourteenth Amendment and §1983.  *Wygant v. Jackson Bd. of Educ.*, 476 U.S. 267, 273, 106 S.Ct. 1842, 1846, 90 L.Ed. 2d 260 (1986). The alternative of a class-of-one equal protection claim is not cognizable in the context of public employment. *Engquist v. Oregon Dept. of Agr.,* 553 U.S. 591*,* 128 S.Ct. 2146, 2154, 170 L.Ed.2d 975 (2008).  As is a claim of *disparate impact* in public employment. See *Washington v. Davis,* 426 U.S. 229, 244, 96 S.Ct. 2040, 2050, 48 L.Ed.2d 597 (1976); *Weberg v. Franks*, 229 F.3d 514, 528 (6th Cir. 2000); *Copeland v. Machulis*, 57 F.3d 476, 481 (6th Cir. 1995).

Title VII analysis for disparate treatment in employment claims applies  to cases brought under §1983 against allegations of  discriminatory employment practices by public employers. *Lautermilch v. Findlay City Schools,* 314 F.3d 271, 275 (6th Cir. 2003)*; Weberg v. Franks*, 229

16

F.3d 514, 522 (6th Cir. 2000); *Arendale v. City of Memphis*, 519 F.3d 587, 603 (6th Cir. 2008).

Ms. Hopkins has two means to establish her case either direct evidence or under the burden

shifting approach modeled under *McDonnell Douglas / Burdine* using circumstantial evidence to

allow for an inference of discriminatory intent. See *Lautermilch,* 314 F.3d at 275-76;  *Anthony v*

*BTR Auto. Sealing Sys., Inc*., 339 F. 3d 506. 514 (6th Cir. 2003); and see *McDonnell*

*Douglas v. Green*, 411 U.S. 792, 802, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973); *Texas*

*Dept. Of Community Affairs v. Burdine*, 450 U.S. 248, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981)

"Direct evidence of discrimination is evidence that proves that discrimination has occurred

without requiring further inferences." *Jacklyn v. Schering-Plough Healthcare Prods. Sales*

*Corp*., 176 F.3d 921, 926 (6th Cir.1999);  *Reeves v. Swift Transp. Co., Inc*., 446 F.3d 637, 640

(6th Cir. 2006).

Ms. Hopkins does not claim to have direct evidence of racial discrimination in her

employment.  Rather she purports to demonstrate a *prima facie* case of discrimination through

statistical evidence. She argues that although the composition of the student body is diverse,

during the 1999-2000 school year 30 out of 40 principals were Caucasian and that this ratio had

increased by the 2009-2010 school year when 25 out of 32 principals were Caucasian. Likewise,

in the 1999-2000 school year, 91.2% of the teachers were Caucasian but by 2009-2010 school

year that number had increased to 92.0% Caucasian.  Ms. Hopkins maintains that this shows the

defendants' preference for white employees. She adds that since 2003 the Canton City School

District Board of Education has hired white persons to fill 65 positions or 74.5%, and that since

2007, 28 of 35 open administrative positions or 80% have been filled by white persons.  Ms.

Hopkins refers to *Hopson v. DaimlerChrysler*, where plaintiff relied on statistical evidence of

minority under- representation.  See *Hopson v. DaimlerChrysler*, 306 F.3d at 431.


      "[G]ross statistical disparities" " may constitute prima facie proof of a pattern or

practice of discrimination" under Title VII." *City of Richmond v. J.A. Croson Co.,* 488 U.S. 469,

501-502, 109 S.Ct. 706, 725 - 726, 102 L.Ed.2d 854 (1989)(citing *Hazelwood School Dist. v.*

*United States*, 433 U.S. 299, 307-308, 97 S.Ct. 2736, 2741, 53 L.Ed.2d 768 (1977)). "[T]he

relevant analysis in cases involving proof of discrimination by statistical disparity focuses on

those disparities that demonstrate such prior governmental discrimination," in a form of  "but

for" analysis  where "absent employment discrimination by the school board, 'nondiscriminatory

hiring practices will in time result in a work force more or less representative of the racial and

ethnic composition of the population in the community from which employees are hired.' "

*Wygant v. Jackson Bd. of Educ*., 476 U.S. 267, 274-275, 106 S.Ct. 1842, 1847, 90 L.Ed 2d 260

(1986)(quoting *Hazelwood School District v. United States*, 433 U.S. at 307, 97 S.Ct. at 2741,

and *Teamsters v. United States*, 431 U.S. 324, 340, n. 20, 97 S.Ct. 1843, 1856, n. 20, 52 L.Ed.2d

396 (1977)).  However, school administrators are licensed professionals in Ohio, and the state

certifies that these individuals have met the prescribed qualifications. See Ohio Rev. Code

§3319.02(A)(1)(a)( the position of school administrator "requires a license designated by rule of

the department of education"); §3319.22.  It is irrefuted that Ms. Hopkins holds the appropriate

certification so she is eligible for consideration of these promotion prospects.


      "[W]here special qualifications are necessary, the relevant statistical pool for purposes of

18

demonstrating  discriminatory exclusion must be the number of minorities qualified to undertake the particular task." *City of Richmond v. J.A. Croson Co.,*  488 U.S. at 502, 109 S.Ct. at 726 (citing *Hazelwood*, supra, 433 U.S., at 308, 97 S.Ct., at 2741; *Johnson v. Transportation Agency, Santa Clara County*, 480 U.S. 616, 651-652, 107 S.Ct. 1442, 1462, 94 L.Ed.2d 615 (1987) (O'Connor, J., concurring in judgment).  "But it is equally clear that '[w]hen special qualifications are required to fill particular jobs, comparisons to the general population (rather than to the smaller group of individuals who possess the necessary qualifications) may have little probative value.'" *City of Richmond v. J.A. Croson Co.,* 488 U.S. at 501, 109 S.Ct. at 726 (quoting *Hazelwood School Dist*. 433 U.S. at 308 n. 13, 97 S.Ct. at 2742  n. 13). Consequently, Ms. Hopkins' statistical compilations have no relevance to the pool of African-Americans in the community who are qualified for administrative or teaching positions with the required state licensing.

The attempted statistical argument aside, applying the *McDonnell Douglas/Burdine* burden shifting framework, there are four elements to a *prima facie* case of race discrimination in discipline: (1) the employee was a member of a protected class; (2) subject to an adverse employment decision; (3) the employee was qualified for the position; and (4) either the employee was treated differently than a similarly situated individual outside the protected class; or replaced by a person outside the protected class.  See *Arendale v. City of Memphis,* 519 F.3d at 603. "On a motion for summary judgment, a district court considers whether there is sufficient evidence to create a genuine dispute at each stage of the *McDonnell Douglas* inquiry. " *Risch v. Royal Oak Police Dept*., 581 F.3d 383, 390 -391 (6th Cir. 2009)(quoting *Cline v. Catholic*

*Diocese of Toledo*, 206 F.3d 651, 661 (6th Cir.2000)).

Ms. Hopkins established that she is a member of a protected class. She further has suffered adverse employment action as  indicated by a demotion and a decrease in salary, less distinguished title, and significantly diminished material responsibilities, and significantly different responsibilities. See *Bowman v. Shawnee State Univ.*, 220 F.3d 456, 461-62 (6th Cir.2000). She obviously has also established that she was qualified for the position of Coordinator. See *Wexler v. White's Furniture, Inc.*, 317 F.3d 564 (6th Cir. 2003); *Cline v. Catholic Diocese of Toledo*, 206 F.3d at  660.  However, her case fails to establish her replacement as Coordinator by a person outside the protected class or less favorable treatment than a similarly situated Caucasian school employee or produce evidence of a similarly-situated comparator to establish disparate treatment. See *Lautermilch*, 314 F.3d at 275 (*Prima facie* case fails without evidence of replacement by someone outside the protected class).

*Conspiracy:*

A civil conspiracy is an agreement between two or more persons to injure another by unlawful action. Express agreement among all the conspirators is not necessary to find the existence of a civil conspiracy. Each conspirator need not have known all of the details of the illegal plan or all of the participants involved. All that must be shown is that there was a single plan, that the alleged coconspirator shared in the general conspiratorial objective, and that an overt act was committed in furtherance of the conspiracy that caused injury to the complainant.

*Collyer v. Darling,* 98 F.3d 211, 229 (6th Cir.1996)(quoting *Hooks v. Hooks*, 771 F.2d 935,

20

943-44 (6th Cir.1985)) [8]

Ms. Hopkins complained that she had been encouraged to apply for the position of Coordinator by Ms. Kim Redmond, and "While I am not trying to point fingers or make excuses, it will suffice to say if Ms. Kim Redmond had remained as my immediate supervisor, the circumstances I find myself today would have been different." (Hopkins' March 23, 2004 letter, Defendants' Ex. K, ECF #45-15).  Following this initial vote of confidence, she received evaluations that she met expectations until the September 2004 evaluation. Complaints about subsequent negative evaluations, though, can be better explained by performance deficits and possible change in management style, rather than by conspiracy. See *Risch v. Royal Oak Police Dept.*, 581 F.3d at 397.


Ultimately, this claim fails because mere allegations of conspiracy " are insufficient to withstand a motion for summary judgment [because they] ... lack the requisite material facts and specificity necessary to sustain a conspiracy claim." *Moldowan v. City of Warren,* 578 F.3d F.3d 351, 395 (6th Cir. 2009)(quoting *Gutierrez v. Lynch*, 826 F.2d 1534, 1539 (6th Cir. 1987)); see also *Jaco v. Bloechle*, 739 F.2d 239, 245 (6th Cir.1984).


*Denial of Promotion under Ohio Rev. Code Chapter 4112:*

Ms. Hopkins alleges in her third cause of action that defendants failed to interview or

---

[8]  The defense of  intra-corporate conspiracy doctrine from *Hull v. Cuyahoga Valley Joint Voc. School Dist. Bd. of Ed.*, 926 F.2d 505, 510 (6th Cir. 1991), was not argued in the motion for summary judgment, which is just as well.  The allegations of conspiracy were not brought under 42 U.S.C. §1985(3), where this doctrine is clearly applicable. Whether this doctrine extends beyond §1985 to other types of conspiracy is questionable. See *Briner v. City of Ontario,* 2010 WL 1141152, 23 (6th Cir. March 26, 2010)(citing  *Kinkus v. Village of Yorkville*, 476 F.Supp.2d 829, 838-41 (S.D.Ohio 2007), reversed on other grounds, 289 F. Appx 86, 90 n. 4 (6th Cir.2008)).

consider her for future administrative positions as they became available. She states that she has

been denied promotions, increased pay and opportunities for advancement. Related to this claim

is the claim of retaliation by denying promotions.  Although both claims arise from shared

operative facts, they shall be addressed separately.


Ohio's Fair Employment Practices Act declares:

It shall be an unlawful discriminatory practice:

(A) For any employer, because of the race, color, religion, sex, military status, national origin, disability, age, or ancestry of any person, to discharge without just cause, to refuse to hire, or otherwise to discriminate against that person with respect to hire, tenure, terms, conditions, or privileges of employment, or any matter directly or indirectly related to employment.

Ohio Rev. Code §4112.02(A).


Ms. Hopkins' failure to promote claim as a subset of her disparate treatment claim is

evaluated according to the same standards federal courts utilize to evaluate discrimination claims

presented under Title VII of the Civil Rights Act of 1964. See *Plumbers & Steamfitters Joint*

*Apprenticeship Comm. v. Ohio Civil Rights Comm'n*, 66 Ohio St.2d 192, 421 N.E.2d 128, 131

(1981); *Russell v. Univ. of Toledo*, 537 F.3d 596, 604 (6th Cir.2008); *Bushman v. Mid-Ohio*

*Regional Planning Comm'n*, 107 Ohio App. 3d 654, 662, 669 N.E.2d 305, 310 (1995).

To make out a prima facie case of race discrimination in the failure-to-promote context, a plaintiff must show that: (1) she is a member of a protected class; (2) she was qualified for promotion; (3) she was "considered for and denied the promotion"; and (4) "other employees of similar qualification who were not members of the protected class received promotions."

*Upshaw v. Ford Motor Co.*, 576 F.3d 576, 585 (6th Cir. 2009)(quoting *Grizzell v. City of Columbus Div. of Police*, 461 F.3d 711, 719 (6th Cir.2006)(citing *Sutherland v. Mich. Dep't of Treasury*, 344 F.3d 603, 614 (6th Cir.2003)); and see *Bushman*, 107 Ohio App. 3d at 310.

22

"The fourth element of the *McDonnell Douglas* test requires a plaintiff to show that a similarly-situated individual outside his protected class was promoted." *Upshaw* , 576 F.3d at 585(citing *Johnson v. Univ. of Cincinnati*, 215 F.3d 561, 572-73 (6th Cir.2000)).

The Canton City Board of Education acknowledges that Ms. Hopkins applied for several administrative positions but was not selected for any of them. It argues with supporting affidavits and related materials that Ms. Hopkins qualifications were not similar in all respects to the successful candidates and that African-Americans were hired to fill some of the administrative positions. Its interviewing committees found that Ms. Hopkins did not possess qualifications in relevant areas that were better than or similar to the successful candidates.  Ms. Hopkins establishes through the deposition of Mr. Nero that for the most part white applicants were hired. However, she cites only to her own deposition to establish her competitors' qualifications with respect to  the fourth part of the burden-shifting approach. This is hearsay evidence and not assertion based on personal knowledge as required under Fed. R. Civ. P. 56(e)(1). There is no evidence to support a claim that the successful candidates were similarly-situated, and Mr. Nero's testimony that in a few instances African-American candidates were selected for administrative positions fails to sustain Ms. Hopkins' disparate treatment claim.  This evidence of  "gross statistical disparities" fails in these circumstances as explained under the equal protection claim.

And carrying the analysis to the next stage, Ms. Hopkins' evidence fails to overcome the articulated reason for adverse action by a showing that the  employer's stated reasons were

pretextual because they: (1) had no basis in fact; (2) did not actually motivate the challenged conduct; or (3) were insufficient to explain the challenged conduct. *Upshaw*, 576 F.3d at 586; *Manzer v. Diamond Shamrock Chems. Co.,* 29 F.3d 1078, 1084 (6th Cir.1994)(overruled on other grounds, *Geiger v. Tower Automotive*, 579 F.3d 614 (6th Cir. 2009)).

*Retaliation under Ohio Rev. Code Chapter 4112:*

The related claim of retaliation Ms. Hopkins asserts that she was denied promotion to an administrative position because she filed a complaint with the Equal Employment Opportunity Commission.   Ohio's Fair Employment Practices Act declares:

> It shall be an unlawful discriminatory practice:
>
> For any person to discriminate in any manner against any other person because that person has opposed any unlawful discriminatory practice defined in this section or because that person has made a charge, testified, assisted, or participated in any manner in any investigation, proceeding, or hearing under sections 4112.01 to 4112.07 of the Revised Code.
>
> Ohio Rev. Code  § 4112.02 (I).

 "For retaliation claims in Ohio, 'Federal law provides the applicable analysis for reviewing retaliation claims.' " *Garner v. Cuyahoga County Juvenile Court*, 554 F.3d 624, 639 (6th Cir. 2009)(quoting *Baker v. Bushman*, 127 Ohio App.3d 561, 713 N.E.2d 487, 491 (1998) (citation omitted)).  So again at the summary judgment stage, Ms. Hopkins can either establish her claim by direct evidence of retaliation (which she does not) or by using circumstantial evidence under the *McDonnell Douglas /Burdine* burden shifting method.  *Upshaw v. Ford Motor Co.*, 576 F.3d 576, 584 (6th Cir. 2009).

24

 Ms Hopkins must establish that:

> (1) she engaged in activity protected by Title VII; (2) this exercise of protected rights was known to defendant; (3) defendant thereafter took adverse employment action against the plaintiff, or the plaintiff was subjected to severe or pervasive retaliatory harassment by a supervisor; and (4) there was a causal connection between the protected activity and the adverse employment action or harassment.

*Garner v. Cuyahoga County Juvenile Court,* 554 F.3d at 639(quoting *Morris v. Oldham Fiscal Ct.*, 201 F.3d 784, 792 (6th Cir.2000); and see *Upshaw*, 576 F.3d at 588.


Ms. Hopkins does not establish that she engaged in protected activity as alleged in the complaint, but defendants concede this point referring to her March 25, 2005 charge to the Ohio Civil Rights Commission.  The Canton City School Board of Education takes exception to the second and fourth elements of the *prima facie* case.  The Board of Education denies involvement in the screening and interview process or that it even knew that Ms. Hopkins was applying for administrative positions.  However, it cannot deny that it approved of this policy for the superintendent to make final hiring recommendations. This attempt to insulate itself from the actions of its agents is dubious at best, and appears to be based on confusion between the policy-maker principal from civil rights actions. See *Knott* v. Sullivan, 418 F.3d 561, 574 (6th Cir. 2005); *Bellamy v. Bradley*, 729 F.2d 416, 421 (6th Cir.), *cert. denied*, 469 U.S. 845 (1984) (Liability under 42 U.S.C. §1983 requires plaintiff to show that a policy-maker participated in the decisions in issues in some manner, or implicitly authorized, approved or knowingly acquiesced in unconstitutional conduct); Compare  *Burlington Industries, Inc., v. Ellerth*, 524 U.S. 742, 757-58, 118 S.Ct. 2257, 141 L.Ed. 2d 633 (1998)(Liability under Title VII dependent on whether supervising employee was acting within scope of employment); *Faragher v. City of*

*Boca Raton.*  524 U.S. 775, 807, 118 S.Ct. 2275, 2292, 141 L.Ed.2d 662 (1998)(same).


The individual defendants, on the other hand, concede that Ohio Rev. Code §4211.99 renders them potentially liable.  However, Ms. Williams was no longer employed with the school district at the time Ms. Hopkins was applying for promotion to an administrative position. Ms. Talarico and Ms. Robinson state that Ms. Hopkins presents no facts to support the fourth element. Defendants present the affidavit from the non-party current superintendent of the school district, Ms. Evans, who states that commencing with the 2007 school year she did review Ms. Hopkins applications, but found that other than being state-certified for an administrative position, Ms. Hopkins was not otherwise qualified nor recommended for interview or hiring. (Evans Aff., ECF # 45-3). Ms. Evans, though, also states that on three occasions Ms. Hopkins was interviewed for the positions of Chief Information Officer, and principal at Gibbs elementary and Lehman Middle Schools.  Ms. Hopkins argues that she is not required to present evidence of the fourth element because that is a question of fact for the jury citing  *Grair v. Ohio Bell Telephone Co.,* 2009 WL 2762359 (N.D.Ohio). *Grair*, however, involved the dismissal of a plaintiff's public policy claim in light of §4112.99 and §4112.06. Her argument that an incomplete *prima facie* case suffices, is clearly incorrect.


Ms. Hopkins' retaliation claims fail against both the Board of Education and the individual defendants because "to establish the element of causal link, a plaintiff is required to proffer evidence sufficient to raise the inference that her protected activity was the likely reason for the adverse action."  *Upshaw*, 576 F.3d at 588 (quoting *EEOC v. Avery Dennisson Corp.*, 104

26

F.3d 858, 861 (6th Cir. 1997). This may be established by evidence that adverse action was taken

shortly after a plaintiff engaged in protected activity. See *Moore v. KUKA Welding Systems &*

*Robot Corp.*. 171 F.3d 1073, 1080 (6th Cir. 1999); *Cooper v. City of North Olmsted*, 795 F.2d

1265, 1272 (6th Cir. 1986).  Defendants admit that Ms. Moore filed a charge of discrimination

with the Ohio Civil Rights Commission in late March 2005.  However, Ms. Hopkins does not

present evidence of the times she applied for other administrative positions.  According to Ms.

Evans affidavit, vacancies occurred at the end of the 2006-2007 school year, and interviews were

conducted during the Spring/Summer of 2007,when Ms. Hopkins interviewed for the Gibbs

elementary school principal position, and interviews were conducted during the Spring/Summer

of 2008, when Ms. Hopkins interviewed for the Lehman Middle School principal position. Ms.

Hopkins states in her opposition (without support) that she first applied for other positions in

March 2006.  Even considering this unsupported statement, the evidence presented does not

show adverse action taken in close temporal  proximity to the exercise of protected activity.


Ms. Hopkins also argues that the first instance of retaliation was when defendants worked

together to manufacture evidence through the unfavorable September 2004 evaluation from Ms.

Williams.  However, this incident preceded her Ohio Civil Rights Commission filing by over a

year.  To repeat, Ms. Hopkins' contention that she does not carry the burden regarding the fourth

element of the *prima facie* case for retaliation is incorrect. She has not carried her burden.


*Transfer and Demotion in Violation of Public Policy:*

Ms. Hopkins alleges in her complaint that defendants collective actions of transferring

her to a position of lesser responsibility and demoting her from Coordinator to teacher violated the public policy of the state of Ohio, "which specifically has provided by statute the proper procedure and circumstances for which said actions can occur."

This claim fails on two accounts. First, while state law does recognize a claim of wrongful discharge in violation of public policy, it has not recognized a violation of public policy for lesser forms of adverse employment action. See *Collins v. Rizkana*, 73 Ohio St. 3d 65, 652 N.E.2d 653 (1995); *Kulch v. Structural Fibers, Inc*., 78 Ohio St. 3d 134, 677 N.E. 2d 308 (1997).[9]

Second, Ms. Hopkins' claim fails because the employment relationship was not at-will. Her employment was governed by a one-year contract and she had statutory protection against termination of this contract under Ohio Rev. Code §§ 3319.02(C) and 3319.16. (See note 3); *Coolidge v. Riverdale Local School Dist.,* 100 Ohio St.3d 141, 144, 797 N.E.2d 61, 65, 2003-Ohio-5357 (2003)(" R.C. 3319.16 affords . . .  protection against termination without 'good and just cause."); *Warren v. Trotwood-Madison City School Dist. Bd. of Educ*., 1999 WL 148233

---

[9]   The Ohio Supreme Court has defined the elements of this tort as follows:

1. That [a] clear public policy existed and was manifested in a state or federal constitution, statute or administrative regulation, or in the common law (the clarity element).
2. That dismissing employees under circumstances like those involved in the plaintiff's dismissal would jeopardize the public policy (the jeopardy element).
3. The plaintiff's dismissal was motivated by conduct related to the public policy (the causation element).
4. The employer lacked overriding legitimate business justification for the dismissal (the overriding justification element).

*Collins v. Rizkana,* 73 Ohio St.3d 65, 69-70, 652 N.E.2d 653, 657 - 658 (1995)

28

(Ohio App. 2 Dist.)(School administrator has no basis in §3319.02(C) for a violation of public policy claim.).  The tort of wrongful discharge in violation of public policy originated as an exception to the employment-at-will doctrine. See *Greeley v. Miami Valley Maintenance Contractors, Inc.*, 49 Ohio St.3d 228, 551 N.E. 2d 981 (1990); *Bushman v. Mid-Ohio Regional Planning Comm.*, 107 Ohio App. 3d at 660.  This public policy protection generally remains limited to employees-at-will. See  *Haynes v. Zoological Soc'y of Cincinnati*, 73 Ohio St. 3d 254, 258, 652 N.E. 2d 948, 951 (1995); *Klepsky v. United Parcel Service, Inc.*, 489 F.3d 264, 270 (6th Cir. 2007).  This has been slightly expanded to include the employment relationship protected under §3319.16, but only in the context of state Workers Compensation for "[a]n employee who is receiving temporary total disability compensation pursuant to R.C. 4123.56 . . .  discharged solely on the basis of absenteeism or inability to work, when the absence or inability to work is directly related to an allowed condition." *Coolidge*, 100 Ohio St.3d at 141, 797 N.E.2d at 62 (syllabus). "Nothing in *Coolidge* abrogated the requirement of at-will employment for violation of public policy claims outside of the workers' compensation context." *Kusens v. Pascal Co., Inc.*, 448 F.3d 349, 366 (6th Cir. 2006). Ms. Hopkins' wrongful transfer and demotion in violation of public policy claim fails.


***Conclusion:***

For the foregoing reasons, the Court finds there are no genuine issues of material fact in dispute and grants defendants' motions for summary judgment (ECF 45, 46).


IT IS SO ORDERED.

29

_____s/James S. Gallas_____
United States Magistrate Judge